IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GLOBAL BIOPROTECT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20cv553 |
| | ) | |
| VIACLEAN TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff brings this action under federal and state law seeking injunctive and equitable relief against Defendant as well as damages for trademark infringement, unfair competition, cybersquatting, unfair and deceptive trade practices, and unjust enrichment. (ECF No. 1.) The Court now considers Plaintiff's motion for a temporary restraining order and preliminary injunction, (ECF No. 8), as well as three motions to seal evidence in this case, (ECF Nos. 11; 27; 38). For the reasons set forth below, Plaintiff's motion for a temporary restraining order and preliminary injunction is denied, and the three motions to seal are granted.

**I.  BACKGROUND**

Plaintiff Global BioProtect LLC ("Global") is a manufacturer of a wide range of cleaning and decontamination products. (ECF No. 1 ¶ 9.) It alleges that it has been offering such products under the name "BIOPROTECT" since at least October 2010. (ECF No. 1 ¶¶ 9–10.) In 2019, Global was awarded a trademark consisting of "the word 'BioProtect' to the

right of which appears a crescent." (ECF No. 1-1 at 2.) This registration protects the mark to the extent that it is employed in marketing "[c]hemicals for use in decontamination of polluted sites," and the certificate lists a date of first use as September 16, 2016. (ECF Nos. 1 ¶ 12; 1-1 at 2.) Global sells its BioProtect products "through various channels," including through its website located at <bioprotect.bio>. (ECF No. 1 ¶ 14.)

Defendant ViaClean Technologies, LLC ("ViaClean") also produces cleaning supplies, including a "BIOPROTECT" brand of antimicrobials which "are used to coat surfaces with a nearly imperceptible, quick-drying, leave-on antimicrobial layer that destroys the microbes present on the treated surface." (ECF No. 23 at 5.) ViaClean alleges that it has used a "BIOPROTECT" mark since "at least 2009" either on its own or through its predecessor and wholly owned subsidiary, Pureshield, Inc., which registered a trademark in 2012 for "Bio-Protect AM500." (*Id* at 5, 7, 13; *see also* ECF No. 25-3 at 2.) ViaClean also contends that it registered its own domain name <bioproctect.us> in 2018, but this site "does not function as a point of sale, and ViaClean does not distribute its products through Amazon.com or similar websites." (ECF No. 23 at 8.)

Though both parties assert that they have been operating in this market for years, a recent "marked growth in demand for [cleaning] products in response to the COVID-19 pandemic," (ECF No. 9 at 8), appears to have led to the discovery that they are concurrently using the name BIOPROTECT to advertise and sell very similar products. Plaintiff Global alleges that it is the "senior user of the BIOPROTECT mark," (ECF No. 33 at 5), and that ViaClean is unlawfully using the mark to sell its own brand of cleaning products, including hand sanitizer, (ECF No. 9 at 8–9). Citing confusion in the marketplace, (*id.* at 9–11), Plaintiff

2

now urges this Court to provide "injunctive relief to prevent the actual and imminent irreparable harm" it contends ViaClean's use is causing, (*id.* at 12).

## II. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right" that a court must grant only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). To make a sufficient showing, a plaintiff must establish: (1) a likelihood of success on the merits; (2) that irreparable harm will result in the absence of an injunction; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Id.* at 20. Each factor is considered independently. *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). Therefore, even if a plaintiff has shown likelihood of success on the merits and irreparable harm, the balance of equities and the public interest can still weigh in favor of denying a preliminary injunction. *See Winter*, 555 U.S. at 23–24, 31 n.5.

Whether to grant a preliminary injunction is within the sound discretion of the district court. *Westmoreland Coal Co., Inc. v. Int'l Union, United Mine Workers of Am.*, 910 F.2d 130, 135 (4th Cir. 1990). Traditionally, courts employ preliminary injunctions for the limited purpose of maintaining the status quo—the "last uncontested status between the parties which preceded the controversy"—and preventing irreparable harm during the course of litigation, thereby preserving the possibility of a meaningful judgment on the merits. *Pashby*, 709 F.3d at 320 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)). Because the issuance of a preliminary injunction "is a matter of equitable discretion[,] it does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32. Rather, "[i]n each

case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

Though Global brings multiple counts against ViaClean, it argues for a preliminary injunction only on the basis of trademark infringement. (*See* ECF Nos. 8; 9.) With respect to this count, the Court will therefore first consider whether Plaintiff has met its burden in demonstrating that it there is a clear likelihood to succeed on the merits.

### A. Likelihood of Success on the Merits

Under the Lanham Act, a plaintiff seeking to establish trademark infringement must demonstrate: "(1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (quoting 15 U.S.C. § 1114(a)). The Court now considers each of these elements in turn.

*1. Mark Validity and Defendant Use (Elements 1–3)*

The first question of whether or not Plaintiff owns a valid and protectable mark is beyond dispute. As mentioned above, Plaintiff has provided the Court with a copy of a registration from the United States Patent and Trademark Office, (ECF No. 1-1), and Defendant acknowledges that the registration exists, (ECF No. 23 at 12).

As to the second and third elements, however, Defendant contends broadly that it has not used the mark Plaintiff has registered. Though acknowledging that it has used the word

4

BIOPROTECT "in commerce" and in connection to sales or advertising, Defendant argues that its hand sanitizers—and hand sanitizers generally—fall outside of the scope of "chemicals for use in decontamination of polluted sites," the phrase used in Plaintiff's registration. (*Id.* at 12–14.)  In addition to arguing that hands are not "polluted sites," Defendant further points out a distinction between the composition of the two products: whereas Defendant's products are "designated as 'Pharmaceuticals' in Class 5" for trademark purposes, Plaintiff's registration refers only to Class 1 chemicals.[1]  (ECF Nos. 23 at 13; 25-3 at 2.)

While neither party addresses this issue, the Court also observes that Plaintiff's registration "consists of the word 'BioProtect' *to the right of which appears a crescent*."  (ECF No. 1-1 at 2 (emphasis added).)  Notably, Defendant's mark includes only a shape in the center of the word "BIOPROTECT" and does not include a crescent to the right of that word.  (*See, e.g.*, ECF No. 9 at 19.)  The Court will address the similarities between the logos in more detail below, but this factor additionally undermines Plaintiff's suggestion that Defendant has used the mark that Plaintiff has registered or an imitation of it.

2. *Likelihood of Confusion (Element 4)*

The final prong in the trademark infringement analysis is whether a defendant's use of the mark is likely to cause confusion.  This bar is met when "the defendant's actual practice" would be expected to produce confusion "in the minds of the consumers about the origin of

---

[1] Defendant additionally points out that Pureshield's trademark registration—for a product called "Bio-Protect AM500"—provides a date of "first use" that precedes the same date on Plaintiff's registration. (ECF No. 23 at 16.)  Defendant argues, therefore, that "[w]ith respect to common law rights in any category of goods, ViaClean is the senior user" of the BIOPROTECT mark. (*Id.*)  This issue, while potentially weighing in favor of Defendants, has not been fully briefed by the parties and the Court makes no determination as to which party may claim status as "senior user."

5

the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). A court must look at "how the two parties actually use their marks in the marketplace," as opposed to gauging their similarities in a vacuum. *Carefirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (citing *What-A-Burger of Va., Inc. v. Whataburger, Inc.*, 357 F.3d 441, 450 (4th Cir. 2004)). A determination on this issue is "inherently factual" and it "depends on the unique facts and circumstances of each case." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (citation omitted).

To aid in this determination, the Fourth Circuit considers the following nine factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by marketholders; (5) the similarity of advertising used by the marketholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017) (citing *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009)). "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *Fleet Feet, Inc. v. Nike Inc.*, 419 F. Supp. 3d 919, 938 (M.D.N.C. 2019) (citing *Anheuser-Busch*, 962 F.2d at 320); *see also Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006) ("Not all of these factors will be relevant in every trademark dispute, and there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue."). The parties here do not contest each factor, and the Court now turns to the most relevant factors in the dispute.

*Factor 1: Strength and Distinctiveness of Plaintiff's Mark as Actually Used*

"The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source," *Carefirst*, 434

F.3d at 269, and the Fourth Circuit has held that this factor is "paramount" in determining the likelihood of confusion, *Grayson O*, 856 F.3d at 314–15 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). In assessing a mark's strength and distinctiveness, courts bifurcate the analysis into conceptual strength and commercial strength. *See id.* at 315.

Conceptual strength refers to "the linguistic or graphical 'peculiarity' of the mark," *Carefirst*, 434 F.3d at 269 (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). Courts considering conceptual strength generally assess where a mark falls along a continuum from generic to fanciful. *See, e.g., George & Co.*, 575 F.3d at 393–94 (describing the four categories along this spectrum as "(1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful" (citation omitted)). That said, a specific determination of which category a mark falls into is not necessary in all cases, nor is it outcome-determinative. *See Carefirst*, 434 F.3d at 269–70 (finding that Plaintiff's assertion that its mark is suggestive "may or may not be correct, but this designation does not resolve the mark's conceptual strength").

Commercial strength, on the other hand, "looks at the marketplace and asks if in fact a substantial number of present or prospective customers understand the designation" to refer to a particular entity. *Id.* at 269 (citation and internal quotation omitted). Courts employ six factors in this analysis:

> (1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark.

*Fleet Feet* at 419 F. Supp. 3d at 940 (citation omitted).

The Court first considers the conceptual strength of Plaintiff's mark and whether it is distinctive either linguistically or graphically. In considering the linguistics of the mark in

7

question, the Fourth Circuit in *CareFirst* broke down the word "CareFirst" in several different ways, noting that there was "substantial third-party use of the words 'Care,' 'CareFirst,' 'First,' and 'FirstCare'" in the industry. 434 F.3d at 270. A similar exercise in this case reveals the relatively generic prefix of "Bio" that could apply to a wide range of products inside the parties' industry with an equally generic base word of "Protect" that could likewise describe a broad gamut of goods or services. Even when combined, the terms are still general enough to apply to a breadth of products. For example, one of the first results from Plaintiff's internet search of the term "bioprotect" returns a website for <bioprotect.com>, which markets a product that claims to be a "pioneer in radiation protection technology," (ECF No. 10-9 at 2), a significant departure in use from the goods at issue in this case. Graphically, the mark is distinctive in some ways. For instance, Plaintiff Global uses an elongated blue crescent to the right of the black-lettered word "BioProtect." (*See* ECF No. 9 at 19.) It additionally capitalizes only the letters "B" and "P" in its brand name, emphasizing two distinct parts of the word. (*Id.*)

In considering the commercial strength of the BioProtect mark, Plaintiff Global asserts that it has "continuously—and successfully—promoted its products under the BIOPROTECT mark" and points to an increase in "sales, revenue, and number of offices" over several years, culminating in "exponential growth in 2020." (*Id.* at 17.) These vague statements, however, do little to suggest a high level of commercial strength. In *Grayson O*, for instance, the Fourth Circuit considered the context of the sales and advertising expenditures within the appropriate marketplace instead of isolation, finding that they were "minimal" when compared to the "multi-billion dollar hair care industry." 856 F.3d at 316.

8

The court ultimately found that the mark was commercially weak when plaintiff provided no evidence of unsolicited media coverage, attempts to plagiarize, or consumer studies showing a link between the mark and the product. *Id.* at 316–17. There is the same lack of evidence in this case, and thus the Court does not have before it any basis to find substantial commercial strength under the Fourth Circuit test.

*Factor 2: Similarity of the Two Marks to Consumers*

The second factor in the test is the similarity of the two marks as they appear to consumers. In making this determination, courts have noted how words are capitalized in the two marks, as well as their "font, style, size, or color." *Fleet Feet*, 419 F. Supp. 3d at 928. This comparison may include the background of those marks as well. *See Grayson O*, 856 F.3d at 318. Courts also focus on any "dominant portions of the parties' marks: 'whether there exists a similarity in sight, sound, and meaning which would result in confusion.'" *Fleet Feet*, 419 F. Supp. 3d at 941–42 (quoting *George & Co.*, 575 F.3d at 396). In brief, these dominant portions are "whatever is most noticeable in actual conditions," and courts give these dominant parts of a mark "more weight when assessing similarity because consumers are more likely to confuse marks with dominant similar features than marks with less noticeable features." *Grayson O*, 856 F.3d at 317 (citation omitted).

Plaintiff Global argues that "no additional analysis is required" for this factor because "the Parties' respective marks are *identical* in appearance, sound, and meaning." (ECF No. 9 at 18.) Yet this contention significantly overstates the similarity between the two marks. Though Plaintiff is correct to point out that both parties "capitalize the 'B' and the 'P'" in "BioProtect," (*id.*), it fails to acknowledge that Plaintiff capitalizes only those two letters

9

whereas Defendant ViaClean presents the word "BIOPROTECT" in all caps.  (*See id.* at 19.)  Additionally, Plaintiff writes out "BioProtect" in a standard black font while Defendant uses blue writing for the prefix "BIO" and a thinner black font for the base word "PROTECT."  (*Id.*)

Plaintiff Global next contends that the marks "use a similar blue color with a crescent shape."  (*Id.* at 18.)  The shape that Plaintiff describes, in this case, is one of the dominant features of both marks and thus requires a more detailed analysis.  Global's crescent, as noted above, appears mostly to the right of the word "BioProtect" and curves around the word so that the crescent is both above and below it, reaching leftward until it stretches to the letter "e."  (*See id.* at 19.)  The crescent is a single, solid color—navy—and never overlaps with any other writing.  (*See id.*)  In contrast, the shape in Defendant's mark appears behind the middle of the word "BIOPROTECT" and extends from the letter "P" to the letter "T."  (*See id.*)  This shape, which is more evocative of a circle than a crescent, involves multiple overlapping lines of different shades of blue.  (*See id.*)

Despite these differences, it must also be noted that the two marks both use the exact same brand name, "BIOPROTECT," and in this way they are identical.  This similarity has been held, at times, to be particularly weighty.  For instance, the court in *Fleet Feet* found that, when comparing the use of a slogan between a shoe store and a shoe company, the "graphic dissimilarities [did] not overcome the identical use of two words across the three marks at issue."  419 F. Supp. 3d at 942 (citation and internal quotations omitted).

That said, in analyzing this factor, a consumer encountering these marks in "actual conditions" would observe both the similarities of the words along with the notable differences in the logos. Thus, this factor does not weigh strongly in favor of either party.

*Factor 7: Actual Confusion*

The next factor the Court will consider is the degree to which there has been actual confusion. Plaintiff presents eight distinct instances of "confusion" in its brief. (*See* ECF No. 9 at 9–11.) However, Defendant points out that some of these examples, such as a customer's advertisement displaying products from both Plaintiff and Defendant, "show no confusion on their face." (*See* ECF No. 23 at 23–24.) Others, such as a consultant hired by Defendant "liking" a social media post that included information about Plaintiff, are "speculative" at best. (*See id.*) That said, in a relatively short period of time Plaintiff has been able to identify multiple interactions with customers and potential clients that show actual confusion among relatively sophisticated buyers.

At the same time, Plaintiff presents some evidence that seems to undercut the contention that confusion is widespread. For instance, Plaintiff cites to a social media post from a consumer on Defendant ViaClean's account which states "[t]here are 2 bioprotect products out there. [W]hich is the real one?" (ECF No. 9 at 11.) This evidence is similar to that found in *Grayson O* where a group of consumers at a trade show informed plaintiff that defendant had copied their mark. 856 F.3d at 320. There, the court found the "reasonable inference from this evidence is not that consumers would confuse the products but instead that they could differentiate between them." *Id.* Such an inference may likewise be made in this case.

11

Overall, however, the specific instances of actual confusion among relatively sophisticated buyers means that this factor weighs slightly in favor of finding that confusion is likely.

*Other Factors*

A couple of factors in the analysis tend to weigh on the side of Plaintiff. For instance, even if the parties believe their hand sanitizer formulas accomplish their purposes in different ways, the goods that the marks identify are essentially the same (Factor 3). Both parties additionally advertise primarily online and operate largely on a business-to-business level (Factor 5). (ECF No. 9 at 20.) The remaining factors are either inapplicable or do not weigh in favor of either party.

*3. The Court Finds No Clear Likelihood of Success on the Merits*

To satisfy this first element—a likelihood of success on the merits—a plaintiff "need not establish a 'certainty of success,' but must make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Pashby*, 709 F.3d at 321). Failure to do so is dispositive. *Id.* at 235 (holding that the ability only to show that success on the merits is merely possible and not likely is "fatal to Plaintiff's motion for preliminary injunction"). Here, while there is some evidence in the record that suggests Plaintiff may succeed, there is also meaningful evidence that undercuts the strengths of Plaintiff's contentions or that otherwise weighs more heavily in favor of Defendant. For this reason, the Court finds that the evidence currently before it is not sufficient to demonstrate a clear likelihood of success on the merits.

12

## B. Remaining Preliminary Injunction Factors

The remaining three preliminary injunction factors flow directly from a likelihood of success on the merits and a corresponding entitlement to relief. For instance, in trademark cases "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (collecting cases). It is the infringement itself that "gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff." *Id.* at 939 (citations omitted). Therefore, having failed to demonstrate that there is a clear likelihood of infringement based on the evidence before the Court, Plaintiff cannot satisfy its burden to show that it is also likely to suffer irreparable harm. Further, with regard to the equities of the case and the public interest, the evidence before the Court likewise is so limited at this time that it can only speculate as to the ultimate impact of a preliminary injunction on either factor.

## C. Preliminary Injunction Conclusion

As discussed above, to obtain a preliminary injunction, a plaintiff must establish: (1) that it has a likelihood of success on the merits; (2) that irreparable harm will result in the absence of an injunction; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff has failed to meet this bar, and there is not sufficient evidence before the Court that would lead it to invoke an extraordinary remedy before both parties have the chance to fully adjudicate their case.

Therefore, the Court denies Plaintiff's motion for a temporary restraining order and preliminary injunction.

### III. MOTIONS TO SEAL

The Court next considers three motions to seal. "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* (citation omitted). "The common law," however, "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). However, it may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." *Id.* (citation and internal quotation marks omitted).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (citing *Rushford*, 846 F.2d at 253). Substantively,

a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Id.* at 267. Therefore, the First Amendment right of access applies in this case, as the documents which are the subject of the motion to seal were filed with the Court in support of both parties' motions for summary judgment.

> Procedurally, a district court presented with a sealing request must
>
> > (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Id.* at 272. The burden rests on the party seeking to keep information sealed. *Va. Dep't of State Police*, 386 F.3d at 575.

The first motion before the Court was filed by Plaintiff Global who "seeks to file under seal the portions of the documents that reflect [its] sensitive and confidential business information." (ECF No. 11 at 1.) This includes "actual and forecasted revenue, sales information, marketing expenditures, and the names and contact information" of third-party customers. (ECF No. 12 at 1.) These limited redactions meet each of the requirements under *Doe*. For one, Plaintiff provided public notice of this request in July 2020 when it filed its motion for a preliminary injunction. (ECF No. 11 at 1.) Plaintiff has not proposed full closure but instead has employed the less drastic measure of only a limited set of redactions throughout its brief and accompanying exhibits. Plaintiff has also demonstrated that these

15

redactions are needed to protect "legitimate interests in the preservation of sensitive business figures and commercial information." (ECF No. 12 at 3.) The Court therefore grants this motion.

The second motion before the Court was filed by Defendant ViaClean Global, (*see* ECF No. 27), who seeks to protect "confidential and competitively-valuable business information," (ECF No. 28 at 3.) This includes "its advertising expenditures and related sales revenue for its BIOPROTECT products, and its estimated cost if it were compelled to re-brand its product line pursuant to a court injunction." (*Id.* at 4.) These limited redactions also meet each of the requirements under *Doe*. Defendant provided public notice of this request in August 2020 when it filed its response to Plaintiff's motion for a preliminary injunction. (ECF No. 27 at 1.) Defendant has not proposed full closure but instead has employed the less drastic measure of only a limited set of redactions throughout its brief and accompanying exhibits. Plaintiff has also demonstrated that these redactions are needed to keep confidential information under seal that would otherwise "cause it competitive harm and give its competitors an unfair advantage." (ECF No. 28 at 5–6.) The Court therefore grants this motion.

The third motion before the Court was filed by Plaintiff Global who seeks to file under seal confidential portions of its reply in support of its motion for a preliminary injunction as well as multiple accompanying exhibits. (ECF No. 38 at 1.) These redacted portions include "sensitive and confidential business information" very similar to the types of information filed under seal in its earlier motion. (ECF No. 39 at 1.) These limited redactions meet each of the requirements under *Doe*. For one, Plaintiff provided public notice of this request in September 2020 when it filed its motion for a preliminary injunction. (ECF No. 38 at 1.) Plaintiff has

16

not proposed full closure but instead has employed the less drastic measure of only a limited set of redactions throughout its brief and accompanying exhibits. Plaintiff has also demonstrated that these redactions are needed to protect "legitimate interests in the preservation of sensitive business figures and commercial information." (ECF No. 39 at 3.) The Court therefore grants this motion.

Based on the above the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (ECF No. 8), is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motions to file under seal, (ECF Nos. 11; 38), is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to File Portions of Documents Under Seal, (ECF No. 27), is GRANTED.

This, the 5th day of March 2021.

/s/ Loretta C. Biggs<br>United States District Judge